UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLAYTON PLUMTREE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No: 22-cv-6635 |
| ) | |
| CITY OF NAPERVILLE, et al, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants CITY OF NAPERVILLE and JASON ARRES ("Defendants") hereby submit the following memorandum of law in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6):

**I.     Introduction[1]**

On April 19, 2021, Plaintiff Clayton Plumtree ("Plaintiff") began working as a probationary police officer for the City of Naperville ("City"). (Sec. Am. Compl. ¶ 18.) Probationary police officers must serve a probationary period of eighteen (18) months. (Sec. Am. Compl. ¶ 92; Section 16.21 of Collective Bargaining Agreement ("CBA") Between the City and The Illinois Fraternal Order of Police Labor Council/F.O.P Lodge #42 at 41, appended hereto as Exhibit A ("Section 16.21 of CBA")[2] .) The City's Chief of Police has discretion to extend the probationary period for training or disciplinary purposes. (*Id.*)

---

[1] The facts in this motion are taken from Plaintiff's Amended Complaint and presumed true for the purpose of resolving this motion, only. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Defendants intend to refute these allegations if the motion to dismiss is denied.

[2] (https://www.naperville.il.us/globalassets/media/hr-documents/collective-bargaining-agreements/fop_42_cba_2020-2024.pdf) (last visited Jan. 3, 2023); *See* Fed. R. Evid. 201(c)(2); *Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (Holding court can consider a collective bargaining agreement on a motion to dismiss).

The City's Police Department ("NPD") has general orders which govern police officer conduct. (Sec. Am. Compl. ¶ 65.) The general orders prohibit police officers from making false or untrue statement statements during their duties. (*Id.*) Police officers are also required to submit truthful and complete reports, and no police officer shall knowingly enter, or cause to be entered any inaccurate, false, or improper information. (*Id.*)

Plaintiff, as a probationary police officer, enforced traffic and parking regulations as part of his patrol officer duties. (Sec. Am. Compl. ¶ 31.) Officer Razionale, a non-defendant, was also employed by the City as a police officer. (Sec. Am. Compl. ¶¶ 42-45.) Police officers enter traffic stops in the NPD's computer-aided dispatch (CAD) system. (Sec. Am. Compl. ¶¶ 53, 75.) In April 2022, Plaintiff and Officer Razionale began a concerted effort to enter incorrect and false data in the City's CAD system. (Sec. Am. Compl. ¶¶ 40, 45, 47.) Plaintiff initiated traffic stops and knowingly allowed Officer Razionale to take credit for the traffic stop to enhance Officer Razionale's traffic stop data. (Sec. Am. Compl. ¶¶ 45, 52-54.)

On September 2, 2022, Plaintiff was notified that he was under investigation for allegedly falsifying traffic stop information contained in the City's CAD system; he was placed on paid administrative leave pending the outcome of the internal investigation. (Sec. Am. Compl. ¶¶ 61-62.) The internal investigation concluded that he had violated internal policies regarding conduct and behavior, police reports, and truthfulness. (Sec. Am. Compl. ¶¶ 64-65.)

On October 14, 2022, Defendant Police Chief Arres ("Chief Arres") terminated Plaintiff for violation of NPD general orders. (*Id.*) The termination was rescinded on October 19, 2022, because Chief Arres could not fire Plaintiff without getting the Board's recommendation. (Sec. Am. Compl. ¶ 81.) Contemporaneous with the recission, Plaintiff's probationary period was extended for 30 days due to disciplinary issues. (Sec. Am. Compl. ¶ 82.)

On October 21, 2022, Chief Arres recommended that the Naperville Board of Police and Fire Commissioners ("Board") terminate Plaintiff. (Sec. Am. Compl. ⁋ 85.) The Board considers the written recommendation of the Police Chief to appoint police officers to non-probationary status or terminate, and acts by either appointment or discharge. (Sec. Am. Compl. ⁋ 16(b); City's Board of Police and Fire Commissioners Rule 4.17, appended hereto as Exhibit B ("Rule 4.17"[3].)

On October 24, 2022, the Board held a meeting to discuss Chief Arres' recommendation. (Sec. Am. Compl. ⁋ 87.) A probationary police officer is an at-will employee; not entitled to a hearing before the Board; and the action of the Board is final. (Rule 4.17.) The Board considered the written recommendation of Chief Arres and approved Plaintiff's discharge. (Sec. Am. Compl. ⁋⁋ 85, 87.) Chief Arres then terminated Plaintiff's employment. (Sec. Am. Compl. ⁋ 134.) Plaintiff does not allege that he has filed any grievance regarding said discharge.

On March 17, 2023, the Court allowed Plaintiff to file a Second Amended Complaint against the City and Chief Arres, in his individual and official capacities. (*See Sec. Am. Compl.*) Plaintiff alleges denial of due process due to the extension of his probationary period and discharge (Count I); a supervisory liability § 1983 claim against Chief Arres (Count II) and *Monell* claim against the City (Count III) for a policy requiring that police officers conduct an average of two traffic stops per day; and a state law claim against Chief Arres for defamation *per se* (Count V) (Sec. Am. Compl. at 15-22; 28-29). Finally, he seeks administrative review of the Board's approval of his termination (Count IV). (Sec. Am. Compl. at 26.)

---

[3] City of Naperville Board of Police and Fire Commissioners Rules (https://www.naperville.il.us/contentassets/e9b0ceb630434be880e5096d0ba5190e/bofp-rules-and-regs.pdf) (last visited Jan. 3, 2023); *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) (Recognizing the ability of a court to take judicial notice of government websites.)

Dismissal of this case is appropriate because Plaintiff had no liberty interest in continued employment and was not entitled to due process; the supervisory claim against Chief Arres is redundant to the *Monell* claim against the City; the allegations are insufficient to maintain a *Monell* claim; Chief Arres is entitled to immunity on Plaintiff's defamation *per se* claim; and administrative review is not applicable in the instant case.

With respect to Count III's §1983 *Monell* claim, the City is also immune from punitive damages. See 745 ILCS 10/2-102; *Newport v. Fact Concepts*, *Inc.*, 453 U.S. 247 (1981)(holding that municipalities are not subject to punitive damages under §1983). The prayer for reliefs' claim for punitive damages must be stricken pursuant to Fed. R. Civ. P. 12(f).

**II.     Standard of Review**

To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell*, 550 U.S. at 544.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

### III. Argument

**A. Plaintiff Did Not Have a Property Interest in Continued Employment with the City (Count I)**

In Count I, Plaintiff asserts a violation of his due process rights. (Compl. ¶¶ 94, 98, 99.) To state a cause of action on his Section 1983 claim, Plaintiff must sufficiently allege: (1) the existence of a cognizable property interest; (2) that Defendants violated his property or interest; and (3) that Defendants did so without due process of law. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2003). Count I should be dismissed because Plaintiff did not have a property interest in continued employment, and thus, was not entitled to due process.

### 1. Plaintiff's Probationary Period

On October 19, 2022, Chief Arres extended Plaintiff's probationary period by 30 days for disciplinary purposes. (Sec. Am. Compl. ¶ 82.) The CBA in effect when Plaintiff was employed by the City as a probationary police officer provided the following: "The Chief shall have the sole discretion to extend the [probationary] period for training or disciplinary purposes." (Section 16.21 of CBA.) Plaintiff's probationary status must be resolved in favor of the CBA, because it is a condition of employment on which the CBA is controlling. *See* 5 ILCS 315/15(b) ("[A]ny collective bargaining contract between a public employer and a labor organization executed pursuant to this Act shall supersede any contrary statutes, charters, ordinances, rules or regulations relating to wages, hours and conditions of employment and employment relations adopted by the public employer or its agents."); *Tobias v. Vill. of Villa Park, Illinois*, 2014 WL 3748637, at *3 (N.D. Ill. July 30, 2014) (*citing Brownlee v. City of Chicago*, 983 F.Supp. 776 (N.D. Ill. 1997). Per the CBA, Chief Arres had the discretion to extend his probationary period, without notice and consequently, Plaintiff was a probationary employee at the time of his discharge. (Section 16.21 of CBA.)

Plaintiff incorrectly contends that a police officer's probationary period cannot be extended due to *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490 (2010). (Sec. Am. Compl. ¶ 97.) *Kodish* involved an entry-level firefighter, who was terminated after he had been employed for over a year, but due to extended medical leave, had only worked for eleven months. *Kodish*, 604 F.3d at 492. Under the Illinois Fire Protection Act, a firefighter could not be discharged without just cause after the firefighter "held that position for one year." 70 ILCS 705/16.13b. *Id.* at 495. In holding the firefighter had a property interest in employment, the court relied on the plain language of the Act, which said the right attached one year from appointment. *Id.* at 498. Here, Plaintiff, a probationary police officer subject to a CBA, does not fall under § 16.13b's ambit and there is no statute like the Fire Protection Act covering police officers, so *Kodish* has no bearing on his claim.

Plaintiff's new allegations in the Second Amended Complaint regarding the probationary period are inconsequential. Rescinding Plaintiff's termination and extending his probationary period to ensure that the proper termination process was followed is a disciplinary purpose; the suggestion otherwise is non-sensical. (Sec. Am. Compl. ¶ 83.) The allegations pertaining to Plaintiff's public opposition to the employee performance policy came after the initial firing in the form of a memorandum sent to the Board on October 21, 2022, so there is no basis for conclusion that the decision to fire him was due to this opposition. (Sec. Am. Compl. ¶ 86.) *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 287 (7th Cir. 2015) (Retaliation claim fails because the statutorily protected activity came after manager began disciplining him for missing work.)

### 2. No Legitimate Expectation of Continued Employment

Plaintiff is not entitled to due process because the CBA and Rule 4.17 vitiate any property interest in continued employment. Rule 4.17 states that a probationary employee is at-

will, is not entitled to a hearing before the Board, and the action of the Board is final. It is well-ssettled that probationary public employees do not possess a property interest in continued employment and as a result, have no right to procedural due process before their employment may be terminated. *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011) (collecting cases). Plaintiff was within his probationary period of employment when he was discharged as an at-will employee.

Further, regarding the allegations against the Board, the Illinois Open Meetings Act does not confer substantive rights. *Kyle v. Morton High Sch.,* 144 F.3d 448 (7th Cir. 1998). Plaintiff's contention otherwise is unsupported and in direct conflict with established precedent. (*Id*.; Sec. Am. Compl. ¶ 88.) Plaintiff has no legal basis for his assertion that discussing a recommendation of termination of an employee during closed session violates the employee's due process rights, and nothing requires the Board to provide him with a written copy of its decision. For the foregoing reasons, he was not entitled to due process.

**B. Policy Claim Asserted in Count II is Redundant to the *Monell* Claim Against the City.**

Plaintiff asserts a supervisory liability claim against Chief Arres for a departmental policy assessing police officer performance based on productivity. (Sec. Am. Compl. at 18.) Plaintiff then asserts a *Monell* claim against the City for the same policy. (Sec. Am. Compl. at 21.) Plaintiff's *Monell* claim against Chief Arres should be dismissed because *respondeat superior* liability cannot be maintained under § 1983. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 690 n.55 (1978). Since the City is a defendant, the *Monell* claim in Count II against Chief Arres is duplicative and it should be dismissed. *See, e.g.*, *Selmani v. Vill. Of Bartlett*, 515 F.Supp.3d 882, 889 (N.D. Ill. 2021) (dismissal

of *Monell* claims against village police chief and village president, each in their official capacity, as redundant); *Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 970 F.Supp.2d 828, 849 (N.D. Ill. 2013) (dismissal of *Monell* claims against village officials in their official capacities as redundant).

### C. Plaintiff's *Monell* Claim Fails to State a Claim for Relief (Count III)

A municipality can be liable under § 1983 when its policies cause a plaintiff's constitutional injuries. See *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658 (1978). To prevail on § 1983 claim against a City, a plaintiff must assert: (1) a violation of his constitutional rights; (2) an injury; and (3) that the injury and violation of rights was directly caused by the City's own action or inaction that carried the requisite degree of fault. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).

65 ILCS 5/11-1-12 prohibits municipalities from requiring a specific number of citations within a designated period. However, it specifically allows a municipality to evaluate a police officer based on his or her points of contact, which includes, the numbers of traffic stops completed, arrests, written warnings, and crime prevention measures. NPD's policy, consistent 65 ILCS 5/11-1-12, expects patrol officers to average at least two traffic stops per working day. (Sec. Am. Compl. at 7.)

In *Petty v. City of Chicago*, an arrestee was identified by a witness as the shooter, indicted for murder, but found not guilty. 754 F.3d 416, 417 (7th Cir. 2014). Petty brought a *Monell* claim alleging that the police officers had a policy of detaining witnesses to crimes for extended periods of time against their will. The *Monell* claim was dismissed because "[e]ven if the City had a policy of detaining witnesses until they gave up information, Petty's *Monell* claim could not succeed because it is not his rights that would be violated by such a policy." *Id*. at 425.

8

Like *Petty*, any constitutional rights purportedly implicated by the challenged policy would be the rights of individuals being stopped, not Plaintiff. Plaintiff does not allege an underlying constitutional deprivation, because there is no constitutional right prohibiting an employer from assessing performance based on productivity.

Moreover, the challenged policy is a red-herring irrelevant to his termination. Plaintiff was fired for falsifying traffic stop data in the City's CAD system to enhance another officer's traffic stop data, not for meeting productivity metrics. (Sec. Am. Compl. ¶¶ 41, 45, 51, 57, 62, 65.) Since he cannot demonstrate an underlying constitutional violation, his *Monell* claim should be dismissed. *See King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [the plaintiff's] constitutional rights.")

### D. Chief Arres Is Immune From Plaintiff's Defamation *Per Se* Claim (Count V)

To state a claim for defamation, a plaintiff must show that "the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and the publication caused damages." *Hadley v. Doe*, 2015 IL 118000, ¶ 30. Under Illinois law, statements that impute "an inability to perform or want of integrity in performing employment duties" or "a lack of ability or that otherwise prejudice a person in his or her profession" are defamatory *per se*. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501(2006). In the instant case, Plaintiff asserts that Chief Arres made intentionally false statements to other City police officers and government agencies that were disparaging to his professional reputation. (Compl. ¶¶ 162-168.)

Section 2-210 of the Tort Immunity Act provides that "[a] public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or

9

the provision of information." 745 ILCS 10/2-210. If a public employee is acting within the scope of his official duties when making purportedly defamatory statements, the public employee has absolute immunity. *Klug v. Chicago Sch. Reform Bd. of Trustees,* 197 F.3d 853, 861 (7th Cir. 1999) (Stating that "even if a statement is defamatory, under Illinois law, the defendants would have immunity for their statements made within the scope of their authority".)

Chief Arres was acting within the scope of his official duties when he made the allegedly defamatory statements. Plaintiff cannot escape immunity by including the conclusory legal statement that nothing in Chief Arres "job description or duties authorized or compelled" him to inform other employees on personnel matters. (Sec. Am. Compl. ¶¶ 69, 71.) A plaintiff cannot rely on labels and conclusions, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265 (1986). There is no factual basis, and it cannot be plausibly suggested that statements to other City police officers via departmental email and roll call and notifying state attorneys about potential issues with utilizing Plaintiff as a witness were made outside the scope of Chief Arres' official duties. (Sec. Am. Compl. ¶¶ 162-168.) Consequently, he is immune from suit.

Chief Arres also enjoys immunity pursuant to 50 ILCS 705/9.2. 50 ILCS 705/9.2 provides immunity for disclosures made to the Illinois Law Enforcement and Training Standards Board. The allegations contained in Paragraph 73 of the Second Amended Complaint fall within the scope of this immunity, and as such, dismissal is appropriate.

Next, any official capacity claim against Chief Arres for defamation *per se* is barred by Section 2-107 of the Illinois Tort Immunity Act. 745 ILCS 10/2-107. Section 2-107 of the Act provides "[a] local public entity is not liable for injury caused by any action of its employees that

is libelous or slanderous." *Id*.; *Ramos v. City of Peru*, 333 Ill. App. 3d 75, 80, 775 N.E.2d 184, 188 (2002) (dismissing defamation claim as barred by Section 2-107.)

### G. Plaintiff Is Not Entitled to Administrative Review (Count IV)

Plaintiff asserts that Board expressly adopted the provisions of the Administrative Review law. (Sec. Am. Compl. ¶ 157.) However, Rule 7.02, which allows for Administrative Review, applies to permanent employees who are entitled to a hearing. Rule 4.17, governing probationary employees, states that a probationary employee is at-will, is not entitled to a hearing before the Board, and the action of the Board is final. Nothing in this Rule allows for judicial review of the Board's recommendation.

Even if Administrative Review Law is applicable, there was no final administrative decision. Administrative Review Law applies to and governs "final administrative" decisions of the Board. 65 ILCS 5/10–2.1–17 (West 2020). Administrative decision is defined as "any decision, order or determination of any agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." (*Id*.) A final administrative decision follows "some sort of adversarial process involving the parties affected, where a hearing on controverted facts is held, and ultimately a disposition is rendered by an impartial [fact finder]." *Jagielnik v. Bd. of Trustees of Police Pension Fund of Vill. of Mundelein*, 211 Ill.App.3d 26, 32 (1991). Here, there was no hearing on Chief Arres' recommendation to terminate Plaintiff. (Sec. Am. Compl. ¶ 103.) While the Board reviewed the recommendation and approved it, Chief Arres ultimately terminated Plaintiff. (Sec. Am. Compl. ¶ 134.) Since there was no final administrative decision, the court lacks jurisdiction over this claim. *Jagielnik*, 211 Ill. App. 3d at 32.

## IV. Conclusion

For the foregoing reasons, Defendants respectfully request this Honorable Court grant Defendants' Motion to Dismiss, and for such other and further relief as the court deems appropriate.

Respectfully submitted,

/s/ Jennifer Bonner
Attorney for Defendants

Jennifer Bonner
Senior Assistant City Attorney
City of Naperville
400 South Eagle Street
Naperville, Illinois 60540
Phone: (630) 420-6013

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the aforementioned document was filed through the Court's CM/ECF system on March 20, 2023. Parties of record may obtain a copy through the Court's CM/ECF system. The undersigned certifies that no party of record requires service of documents through any means other than the CM/ECF system.

s/ Jennifer Bonner
