# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CLAYTON PLUMTREE, Plaintiffs, v. TOWN OF Naperville, ET. AL, Defendants. | Case No: 1:22-cv-06635 Jury Trial Demanded |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Clayton Plumtree, through his undersigned counsel, Disparti Law Group, respectfully submits his Response in Opposition to Defendants Rule 12(b)(6) Motion to Dismiss (Dkt. 23). For the reasons stated herein, Defendants' motion should be denied.

## I. INTRODUCTION AND BACKGROUND

Plumtree was hired as a probationary police officer for the Town of Naperville on April 18, 2021. Second Amended Complaint ("SAC") ¶18. The probationary period was to be for a period of eighteen months. *Id.* at ¶ 92. In September 2022 Defendant Arres, Chief of the Department, suspended Plumtree for more than five days with pay claiming that he manipulated the CAD system for the enforcing the *Id.* at ¶ 92. Arres unilaterally and unlawfully terminated Plumtree on October 14, 2022. *Id.* at ¶ 92. In terminating Plumtree the first time, Arres failed to provide notice to Defendant Naperville Board of Fire & Police Commissioners (Board) or bring written charges before the Board as required. *Id.* at ¶ 81. On October 19, 2022, Arres rescinded his unilateral termination of Plumtree after receiving notice from the Naperville Fraternal Order of Police Lodge ("Naperville FOP") after the Lodge notified Arres that he lacked to unilaterally fire Plumtree. *Id.* Arres added 30 more days onto Plumtree's probationary status for "disciplinary

1

purposes." *Id.* at ¶ 82. Plumtree contends that he was not provided an opportunity to be heard before the Board based on these written charges as a non-probationary police officer. *Id.* at ¶ 88. Plumtree further asserts that he was no longer a probationary employee based on Arres rescinding his termination on October 19, 2022 (one day after Plumtrees' probationary period ended). *Id.* at ¶¶ 101, 103. On October 21, 2022, after Plumtree's probationary period ended, Arres recommended that the Board uphold his recommendation to terminate Plumtree that the Board used to initiate charges against Plumtree, and ultimately terminate him for the second time. *Id.* at ¶¶ 85-87. The Board ultimately terminated Plumtree in closed session with Arres attending the closed session meeting. *Id.* at ¶ 87.

However, as Plumtree correctly points out, Naperville's Ordinance requires that the Police Chief is required to bring written charges before the Board and the officer is to be accorded a hearing. *Id.* Plumtree alleges in his SAC that Arres failed to bring written charges before the Board for his first termination and then the Board failed to provide him a hearing and an opportunity to respond. SAC ¶¶ 88.

## II. ANALYSIS

Plaintiff seeks relief under 42 U.S.C. § 1983 based on the following federal law theories: that he was deprived of his property interest in continued employment in violation of procedural due process (Count I), that the Village engaged in a custom, practice, or policy of denying police officers procedural due process and retaliating against those employees (Count III). Plumtree also brings state law claims for defamation (Count V), and indemnification by Naperville (Count VI).

The defendants move to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted.[1]

### A. LEGAL STANDARD – Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020); *see O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018), and takes judicial notice of the Village's ordinances, *see Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Plaintiff is not required to present evidence in his complaint. *Hunt v. Dart*, 07 C 6003, 2010 WL 300397, *4 (N.D. Ill. Jan. 22, 2010) ("Even after *Twombly* and *Iqbal*, a plaintiff doesn't have to come forward with evidence to survive a motion to dismiss."). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Cozzi v. Vill. of Melrose Park*, 592 F. Supp. 3d 701, 705 (N.D. Ill. 2022).

### B. Factual Allegations – "Threadbare" and "Conclusory Allegations"

As a preliminary matter, Defendants' Motion to Dismiss should be denied to the extent that it seeks dismissal several contested questions of fact (e.g. whether Plumtree was a probationary officer and whether Arres had pretextual reasons for rescinding Plumtree's termination and

---

[1] The Defendants incorrectly make a claim that Plumtree asserts a liberty interest, which is not accurate at this time. Dkt. 23, p. 4.

extending his probationary period). The Defendants first set of objections are directed at what it deems the SAC's general lack of factual detail and specificity by relying on "threadbare" or "conclusory" allegations. (Dkt. 23 p. 4). This claim is unpersuasive. Plaintiffs need not plead specific facts to survive motions to dismiss. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The allegations simply must put Defendants on notice of its claims, which Plaintiffs do. Even if some of Plaintiffs' facts are conclusory, his claims still survive because facts need not be "established" or even alleged (fact-pleading is unnecessary) and they receive the benefit of any fact that could be established later consistent with the complaint's allegations. *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013)("*Iqbal* makes clear that legal conclusions can provide the framework of a complaint so long as they are supported by factual allegations").

Defendants improperly attempt to contest several of Plaintiff's facts, which is improper at this stage of pleading. See Dkt. 23 pp. 2, 5-7, 11. Questions of fact are not appropriately determined by a 12(b)(6) motion since the court must accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). Defendants' Motion to Dismiss should be denied based on Defendants' improper attempt to convert their Motion to Dismiss into a summary judgment motion because the record had not yet been fully developed and disputed facts exist. *Victims of Hungarian Holocaust v. Hungarian State Railways*, 798 F.Supp.2d 934, 938 (N.D.Ill.2011) ("the motion to dismiss stage is not the proper juncture to resolve disputed facts"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Nor is it appropriate to require a plaintiff to provide evidence at the pleadings stage to support his claims. At the summary judgment stage of the proceedings, if warranted, Defendants may re-raise arguments related to what they deem to be conclusory or threadbare. Thus, such arguments are premature at this juncture and should be summarily denied.

Defendants do not argue that Plaintiff is not entitled to Count VI indemnification and therefore is not considered in Plaintiff's Motion in Opposition.

**I. This Court Should Deny Defendants' Motion as to Count III because Plaintiff Sufficiently Established Defendants' *Monell* Liability.**

Plaintiff brings a constitutional claim against Defendant Naperville for violations of Due Process and Retaliation for opposing a controversial traffic stop quota, so *Monell* applies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Section 1983 creates a cause of action for constitutional violations committed by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. A municipality is responsible for its own conduct, and *only* its own conduct. *Id.* at 694, 98 S.Ct. 2018. Before holding a municipality responsible, "the plaintiff must begin by showing an underlying constitutional violation, in order to move forward with her claim against the municipality." *See Schor v. City of Chicago*, 576 F.3d 775, 779 (7th Cir. 2009).

Defendants' Motion should also be denied as to Count III since Defendants fails to properly rebut this Count and further cites no authority for the proposition that to survive a *Monell* claim that Plaintiffs must precisely delineate a single custom or policy that caused their alleged harm. All Plaintiff must show is that there is a true municipal policy at issue, not a random event. Plaintiff has sufficiently pled a *Monell* claim against Defendants. SAC ¶¶31-40, 51, 86, 96, 99-109. When Plaintiff's factual allegations are taken together and the complaint is read as a whole, the SAC provides enough details about the subject matter of the case to present a story that holds together, which is a set of interrelated, mutually reinforcing customs or practices, all of which contribute to civil rights violations alleged by Plaintiffs. This theory has withstood motions to dismiss in many other cases in the seventh circuit. *Maglaya v. Kumiga*, No. 14-cv-3619, 2015 WL 4624884, at 5;

see also *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 816 (N.D. Ill. 2006) ("A failure-to-train or discipline allegation often supports a finding of municipal liability because a policy of condoning abuse may embolden a municipal employee and facilitate further abusive acts."); *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 603 (N.D. Ill. 2012) (discussing jury's finding that a code of silence and/or policy of failing to discipline officers was the moving force behind off-duty officer's beating of plaintiff in violation of her right to bodily integrity). As such, the theory underlying Plaintiffs' *Monell* claim is on all fours, and therefore the Defendants' Motion to Dismiss as to Count III should be denied.

## II. Due Process Claim and Administrative Review Claims (Counts I and V)

Plumtree alleges that he was deprived of his property interest in continued employment with the Village without due process, in violation of the Fifth and Fourteenth Amendments under two alternative theories: (1) Plumtree was a full-time law enforcement officer because his probationary period was completed before he was fired or (2) Plumtree was a probationary employee entitled to additional protection based on Naperville's policies.

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV, § 1. "A procedural due process claim requires a two-fold analysis. First, the Court must determine whether Plumtree was deprived of a protected interest; second, the Court must determine what process is due." *Bradley v. Village of Univ. Park*, 929 F.3d 875, 882 (7th Cir. 2019). To state a due process claim for his discharge, Plumtree must establish that he had a constitutionally protected property interest in his employment. *Bishop v. Wood,* 426 U.S. 341, 96 S. Ct. 2074 (1976). To determine whether a property interest exists, the court must look to state law. *Roth,* 408 U.S. at 577, 92 S. Ct. at 2709.

A property right exists if the plaintiff can point to a specific ordinance, state law, contract or understanding which limits the ability of Naperville to discharge him. See *Krecek v. Board of Police Comm'rs of La Grange Park,* 271 Ill.App.3d 418, 207 Ill.Dec. 227, 646 N.E.2d 1314, 1318–19 (1995).

**1. Plaintiff was non-probationary police officer of the Naperville Police Department.**

Defendants try to create the narrative that this case is the straightforward termination of a probationary officer. Dkt. 23. But this is case is not so simple. Defendants claim that Plumtree was still within his probationary period when his employment ended, so this determination seems deceptively easy. But that is not the case when Defendants terminated Plumtree twice and in doing so used the pre-texual reason of expanding his probationary period to avoid the "just cause" termination. It is well-settled that probationary public employees do not possess a property interested in continued employment and thus have no right to procedural due process before their employment may be terminated. *Common v. Williams,* 859 F.2d 467, 470–71 (7th Cir.1988) (Illinois corrections officer fired within probationary period had no protected interest in continued employment). Illinois law presumes "an employment relationship without a fixed duration is terminable at will." *See Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 317–18 (1987). That presumption "can be overcome by demonstrating that the parties contracted otherwise." *Id.* 106 Ill.Dec. 8, 505 N.E.2d at 318. "Property interests in employment may be created by express or implied contracts ...." *Farmer v. Lane*, 864 F.2d 473, 478 (7th Cir. 1988).

Despite Defendants' contentions, this Court must accept Plumtree's well-pled facts as true for purposes of this Motion. As such, when the Board terminated Plumtree, he was a full-time law

enforcement officer and no longer a probationary employee. SAC ¶¶ 101, 103. When a public employee has a property interest in his or her job, the constitutional requirements for pre-deprivation procedures are well-established: notice of the proposed deprivation, a statement of reasons, and an opportunity to be heard in response. *Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972); *Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972).

As for "the specific dictates of due process" in any individual case, the Court looks to "three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Being fired from a job does not require a pre-deprivation hearing that approximates a full trial. *Bradley v. Village of Univ. Park* , 929 F.3d 875, 882 (7th Cir. 2019). But a job is nonetheless a substantial enough property interest that, absent extenuating circumstances such as an emergency, the basics of pre-deprivation due process must be provided. *Id.*

Plumtree's property interest arises from Naperville's Ordinance that follows Illinois law requiring a non-probationary police officer be entitled to notice of any charges against him and an opportunity to respond. SAC ¶ 15-16; Naperville Municipal Code §1-8A-1: Appointments and Discharges; § 2-13-3: - Powers and Duties. As asserted throughout Plumtree's SAC, Defendants disregarded such requirements and terminated Plumtree twice without affording him a pre or post deprivation remedy. SAC ¶¶ 63 - 73, 85 - 88. It is thus premature to dismiss the due process and administrative review counts since Plumtree was entitled to one of these two remedies. At

summary judgment stage, Defendants can revisit these two claims and Plumtree will point to sufficient evidence to support such claims. Therefore, Defendants' motion to dismiss Counts (I) and (IV) must be denied.

**(2) Alternatively, Plumtree Establishes a Property Interest based on "Clear Policies"**

Alternatively, Plumtree establishes a property interest through the Naperville Ordinances and Board Rules. Although the general rule in Illinois is that probationary public employees do not have a property interested in continued employment, a municipality can choose to enact rules and regulations to " 'provide greater protection for its employees." *Nolan,* 663 F.3d 287, 296 (7th Cir. 2011) (quoting *Lewis v. Hayes,* 152 Ill.App.3d 1020, 1024, 505 N.E.2d 408, 411 (1987)). For such a rule or regulation to be effective, however, it must be a "clear policy statement." *Faustrum v. Board of Fire and Police Comm'rs of the Village of Wauconda*, 240 Ill.App.3d 947, 181 Ill.Dec. 567, 608 N.E.2d 640, 643 (1993).

In *Lewis v. Hayes,* 152 Ill. App. 3d 1020, 505 N.E.2d 408 (Ill. App. Ct. 1987), the court found that the plaintiff had a protectable property interest in his employment as a probationary officer. In *Lewis*, however, the applicable rules specifically prescribed certain procedures for the removal of probationary employees. *Id.* at 1024, 505 N.E.2d at 411. The rules applicable in *Lewis* provided that "a probationary employee can be terminated if he is found incompetent or disqualified for the performance of his duties," and that termination can take place "by and with the consent of the Commission after the chief submits written reasons for the termination." *Id.* The court held that these rules required "cause" to be shown before a probationary employee was discharged and held that once a municipality provided its employees greater protection it was bound by its rules. *Id.*

9

Almost analogous to *Lewis*, Plaintiff was probationary police officer, but Defendant Naperville enacted its Rules of the Commission, which modified the status of a probationary police officer to state "In no case shall a probationary police officer be discharged until after the Board provides the Police Chief with a written decision upholding the Police Chief's termination recommendation." SAC ¶ 16(a). In *Lewis*, the Court denied the Defendants attempt to argue that this interpretation did not establish a "for cause" termination. The Court further held to hold otherwise "would render the requirement to bring charges before the Board of Police and Fire Commission meaningless." If a probationary officer could be terminated either with cause or without, the "with cause" language would have no meaning whatsoever, and it belies common sense that Naperville would draft meaningless language and insert it into its Commission's Rules. Further, if Defendants truly believed that Plumtree was a probationary employee, who could be terminated at-will, then why did Defendants: 1) suspend Plumtree pending an investigation; 2) order Plumtree to sit for a formal interrogation pursuant to the Peace Officer Disciplinary Act; 3) allow Arres to rescind Plumtree's unilateral termination that he imposed; and 4) Present written charges before the Board of Fire and Police Commission? Under Defendants' theory, Plumtree could have been terminated for any reason – but they still gave him a reason despite spilling considerable ink claiming that Plumtree was an at-will employee that could be terminated for any reason.

Next, Plaintiff contends that Arres exercised arbitrarily and capriciously terminated Plumtree, rescinded that termination, extended his probation, and then sat in on the Board of Fire and Police Commission termination hearing closed session. While a police chief has a responsibility to the community to secure maximum efficiency from the police force and his or her actions are to be reviewed to determine whether there was good faith and a reasonable exercise of

discretion. *Martin v. Matthys* (1986), 149 Ill. App.3d 800, 806, 501 N.E.2d 286.) Absent manifest and palpable abuse of discretion, the wisdom, necessity, and propriety of any action regarding the administration of a police force is a matter for the municipality to decide. *Martin,* 149 Ill. App.3d at 806).

At this stage of pleading, Arres' reason for extending Plumtree's probationary period for "disciplinary purposes" is a red herring. Arres already fired Plumtree days earlier. Arres then does an about-face and rescinds Plumtree's termination and then extends Plumtree's probationary period for an indefinite time for "disciplinary purposes." Arres have no valid reason to extend Plumtree's probationary period other than to try to skirt the "just cause" termination requirement. Defendant even concedes that Arres rescinded Plumtree's termination because "The termination was rescinded on October 19, 2022, because Chief Arres could not fire Plaintiff without getting the Board's recommendation." Dkt. 23, pp. 2, 6. Plumtree alleges throughout his SAC that Defendants attempts to circumvent the "just cause" process that Plumtree would be if the Defendants determined that his probationary status would have terminated. There was nothing left to investigate because Arres had already doled out his termination. No matter what Arres believed, he was not able to alter unilaterally the terms of Plumtree's employment. That role was left solely to the Board of Fire and Police Commission.

### III. Arres Is Not Absolutely Immune (Count V)

Arres argues that he is shielded by 745 ILCS 10/2-210 of the Tort Immunity Act, which provides: "[a] public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." Plaintiff admits that Arres is a public employee who provided information.

11

The only issue in contention is whether Arres's provision of the information was conduct that fell within the scope of his employment. Illinois courts have found that an employee's conduct is within the scope of their employment, "if but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." *Adames v. Sheahan*, 233 Ill.2d 276, 299.

Arres's argument regarding the Tort Immunity Act is self-defeating. As an initial matter, § 2-210 only applies to negligent communications, not intentional or reckless acts as alleged in Plumtree's SAC. SAC ¶¶ 164-165, 167-176. Section 2-210 "'unambiguously' does not immunize" willful and wanton conduct because it "stat[es] expressly that the provided immunity applies only to conduct that is negligent." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 362 Ill. Dec. 484, 973 N.E.2d 880 (Ill. 2012). § 2-210 defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1- 210. Here, Plumtree alleges that Arres made the defamatory statements deliberately or with reckless disregard. SAC ¶¶ 164, 172-173. Defendants' threadbare and conclusory statements without citation to legal precedent should be disregarded.

Arres also was not acting within the scope of his employment. The burden to prove that immunity exists is on the party seeking the immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Despite carrying this burden, the Defendant presents this Court with minimal facts and zero case precedent wherein any court found a private individual or a City investigator absolutely immune from suit for defamatory statements to current or prospective employers

Under common law, when an official makes improper statements that have nothing to do with his official duties, the official is exposed to personal liability in a defamation suit. For

example, in *Catalano v. Pechous*, a municipal clerk made a statement implying that another official had taken a bribe. The court held that the statement was not related to the clerk's official duties and refused to grant immunity to the clerk. Likewise, in *Stratman v. Brent*, 291 Ill.App.3d 123 a police chief was not immune when he made false statements to a federal agency to which a former police officer had applied for a job. Similarly, in the case at bar, the official duties of a law enforcement investigator is not to send defamatory emails to Plumtree's current and prospective employers and therefore no immunity applies.

Arres' argument that his sending of the defamatory communications was part of his job duties is an attempt to misguide this Court. By stating as such, he is claiming that it was within the scope of his duties to republish unsubstantiated information about Plumtree to police agencies outside of, and unrelated to, the City of Naperville. Finally, Arres has not and cannot argue that such activity took place, "within the authorized time and space limits," and was, "actuated, at least in part, by a purpose to serve," his employer, the City of Naperville. *Adames v. Sheahan*, 233 Ill.2d 276, 299.

## CONCLUSION

The Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss and entitle his allegations to the benefit of the doubt. If the Court is inclined to grant Defendants' Motion in whole or part, the Plaintiff prays for an opportunity to amend his Complaint.

Respectfully submitted,

Clayton Plumtree

/s/ Gianna R. Scatchell

/s/ Nicollette Haines

By:_____

Gianna R. Scatchell, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: gia@dispartilaw.com

Nicollette Haines, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 334
F: (312) 846-6363
E: nicollette@dispartilaw.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing Complaint was filed on this Court's CM/ECF filing system on May 12, 2023 and that such counsels are all registered e-filers.

/s/ Gianna Scatchell

_____