UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CLAYTON PLUMTREE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 6635 |
| | ) | |
| **CITY OF NAPERVILLE and JASON ARRES,** | ) | Judge Rebecca R. Pallmeyer |
| police chief, in his official and individual | ) | |
| capacities, | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Clayton Plumtree, a former police officer for the City of Naperville, Illinois, alleges that Naperville Police Chief Jason Arres and Naperville's Board of Fire and Police Commissioners (the "Board") fired him without due process after Plumtree complained about the Police Department's internal policy requiring officers to effect at least two traffic stops a day. The court dismissed Plumtree's Second Amended Complaint in part [34]. Plaintiff has now filed a Third Amended Complaint, which added two new counts but otherwise remains unchanged [37]. Defendants again move to dismiss [39], adding new arguments for dismissal of the counts that survived the court's earlier ruling. For the reasons stated below, the motion is denied.

### BACKGROUND[1]

**I.   Factual Background**

In April 2021, Plumtree began working as an officer for the Naperville Police Department on an 18-month probationary period. (Third Am. Compl. (hereinafter "TAC") [37] ¶¶ 18, 92.) At the time, the department employed a policy under which officers were "expected to average at least two traffic stops per working day" (the "Traffic Stop Expectation" policy) and warned that

---

[1]   Most of the complaint's factual allegations are not relevant to resolving Defendants' current motion and are recounted at earlier stages in the litigation, so the court offers only a brief account here. A fuller recounting can be found in this court's previous ruling on Defendants' motion to dismiss Plaintiff's Second Amended Complaint. (Mem. Op. and Ord. [34] at 1–5.)

their compliance "w[ould] be monitored by their respective sergeant" such that they could "be held accountable" for failing to "meet expectations." (TAC ¶ 31.) As the Complaint points out, quota systems like this—at least explicit ones—are illegal in Illinois. (*Id.* ¶¶ 25–30 (citing 65 ILCS 5/11-1-12 (2019) (stating that "[a] municipality may not require a police officer to issue a specific number of citations within a designated period of time").)

According to the Complaint, numerous "Department supervisors and other police officers, including Plumtree, verbally expressed their concerns and opposition" to this *de facto* quota system the Naperville Police Department employed. (TAC ¶ 38.) Nonetheless, Plumtree appears to have been successful in achieving the department's expectations—enough so that he allowed fellow Officer Razionale, who was not meeting the quota, to take credit for some of Plumtree's own. (*Id.* ¶¶ 41–43, 45.) Plumtree told Sergeant Heun about this arrangement on August 16, 2022; Plaintiff alleges that Heun shared the information with Commander Deuchler, who told Heun that the practice fell into a "gray area," but that the practice was permissible "'so long as everyone met their traffic stop quotas.'"[2] (*Id.* ¶ 47–50.) Later that August, however, evidently because body camera footage was inconsistent with traffic stop records, Deuchler told Sergeant Heun to direct Razionale and Plumtree to cease the practice of "sharing" stops, and warned that if the practice did not stop, "they could get in trouble." (*Id.* ¶¶ 57–58.)

The Complaint does not make clear whether Plumtree in fact continued to share traffic-ticket credit with Razionale between August and September, but on September 2, 2022, an investigator informed Plumtree that he was being placed on paid administrative leave pending an inquiry into Razionale's "changed traffic stops." (*Id.* ¶¶ 57–62.) Then, on October 14, 2022,

---

[2] Plaintiff does not provide Officer Razionale's, Sergeant Heun's, or Commander Deuchler's first names.

Defendant Arres "unilaterally terminated" Plumtree. (*Id.* ¶ 64.) Arres cited general Department orders against officers being untruthful or making inaccurate statements.[3] (*Id.* ¶ 65.)

Soon after, the Naperville Fraternal Order of Police Lodge told Arres that he lacked the authority to unilaterally terminate Plumtree. (*Id.* ¶ 81.) In response, Arres withdrew the termination and "extended Plumtree's probationary period for an additional 30 days for 'disciplinary purposes,'" and, in that period, the Board of Fire and Police Commissioners commenced formal termination proceedings. (*Id.* ¶¶ 82, 85.) In a memorandum that he submitted to the Board, Plumtree "outlined in explicit detail, the City's/Arres' improper traffic expectation system and further communicated that this policy created considerable confusion and discontent within the Department." (*Id.* ¶ 86.) On or around October 24, 2022, the Board held a special meeting and voted unanimously to terminate Plumtree. (*See id.* ¶¶ 87–88.) Meanwhile, Sergeant Heun was suspended for fifteen days, and Officer Razionale "was permitted to resign before he was fired." (*Id.* ¶ 129.)

## II.     Procedural Background

Plaintiff initiated this case in November 2022 [1]. Defendants moved to dismiss that complaint, and Plaintiff effectively responded by seeking leave to amend [17]. He filed a First Amended Complaint and then a Second Amended Complaint [19-2] asserting six claims: (I) a due process claim against all Defendants concerning the way Plumtree was terminated; (II) a 42 U.S.C. § 1983 claim against Arres individually for civil rights violations; (III) a *Monell* claim against Naperville; (IV) a claim for Illinois state law administrative review pursuant to 735 ILCS 5/3-101 *et seq.* against Naperville; (V) an Illinois defamation claim against Arres; and (VI) an indemnification claim against Naperville. Defendants again moved to dismiss [22], and the court granted that motion in part, dismissing Counts II and IV—the § 1983 claim against Arres and the Illinois state

---

[3] The Complaint alleges that Arres went further, notifying different counties' State's Attorney's Offices that Plumtree had committed a "*Brady* violation" and also filing a report with the Illinois Law Enforcement Training and Standards Board seeking to permanently bar Plumtree from officer duties. (*Id.* ¶¶ 72–73.)

3

law administrative review claim against the City—but denying Defendants' motion with respect to Counts I, III, and V.

Plaintiff has since amended his complaint once more. The Third Amended Complaint keeps Counts I, III, V, and VI unchanged. (TAC at 1 n.1.) It also adds two new counts: Count II states a claim for retaliatory discharge under Illinois law and Count IV seeks an order of mandamus that would direct Defendants to reinstate him as a Naperville police officer. (*See id.* ¶¶ 112–18, 142–54.) Defendants have moved to dismiss Plaintiff's Third Amended Complaint in full, including the counts—which remain unchanged—that they unsuccessfully challenged in their last motion to dismiss. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s Third Am. Compl. (hereinafter "MTD") [40] at 3–4.) In response to Defendants' motion, Plaintiff voluntarily dismissed Count IV. (Pl. Clayton Plumtree's Resp. in Opp. to the Defs' Mot. to Dismiss (hereinafter "Resp.") [55] at 5.) Defendants' challenges to the remaining counts are before the court.

## **DISCUSSION**

The standards governing Defendants' motion are familiar. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court may dismiss a complaint that fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). To meet this plausibility threshold, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Put differently, a plaintiff must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). In making this assessment, the court "accept[s] as true all factual allegations in the . . . complaint and draw[s] all permissible inferences in [plaintiff's] favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

I.  **Counts I, III, V, VI**

Defendants' objections to Counts I, III, V, and VI of Plaintiff's complaint fail because their new motion to dismiss simply "rais[es] new arguments that [they] could have raised in [the] previous Rule 12(b)(6) motion." *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 22 C 1422, 2023 WL 8827946, at *3 (N.D. Ill. Dec. 21, 2023).

As a formal matter, raising successive failure-to-state-a-claim arguments is permissible under the law of this circuit. Rule 12(g)(2) prohibits the filing of a motion "raising a defense or objection that was available to the party but omitted from its earlier motion," but makes an exception for jurisdictional objections, or for an argument that the complaint fails to state a claim for relief. Thus, the Seventh Circuit has held that "a litigant need not consolidate all failure-to-state-a-claim arguments in a single dismissal motion." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion.").

Relying on *Ennenga*, Defendants argue that they are not barred from raising new arguments to dismiss Counts I, III, V, and VI of Plumtree's Third Amended Complaint after their previous efforts to do so failed. (Reply in Supp. of Defs.' Mot. to Dismiss Pl.'s Third Am. Compl. (hereinafter "Reply") [56] at 2.) Put differently, though these counts survived Defendants' prior motion to dismiss and remain wholly unchanged, Defendants contend they are nevertheless entitled to a second bite at the apple.

The court disagrees. In *Ennenga*, after defendants succeeded in dismissing the plaintiffs' first complaint for failure to state a claim, the plaintiffs amended their complaint to raise the same legal claims but allege wholly different theories of liability to support them.[4] 677 F.3d at 771. In

---

[4] The case concerned a dispute over an estate, in which some of the beneficiaries sued lawyers that had been involved in drafting estate-plan documents. The plaintiff's first complaint alleged claims of legal malpractice and breach of fiduciary duty predicated on a conflict-of-interest theory; specifically, that one of the lawyers who helped plan plaintiff's estate was married to one of the estate's beneficiaries. The amended complaint raised the same claims—

response, the defendants moved again to dismiss, this time "raising new arguments to address the new issues implicated by the plaintiff's amended complaint"—specifically, a statute-of-limitations defense. *Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11 C 8758, 2014 WL 3638852, at *2 (N.D. Ill. July 23, 2014) (citing *Ennenga*, 677 F.3d at 771–73)). The Seventh Circuit affirmed the district court's partial dismissal of the plaintiffs' amended complaint on these new grounds. In this case, in contrast, no new issues or theories are raised by concerning these Counts in Plaintiff's Third Amended Complaint. This court rejected Defendants' prior attempts to dismiss these very same claims, and Plaintiff has not changed them at all in amending the complaint. The arguments Defendants make here were available to them when they filed their prior motion to dismiss, but not raised at that time.

Unlike the situation in *Ennenga*, Defendants' motion more closely resembles the kind of piecemeal litigation Rule 12(g) is meant to prevent. *See Kramer*, No. 11 C 8758, 2014 WL 3638852, at *2 (dismissing successive 12(b)(6) motion on similar grounds); *Williams*, No. 22 C 1422, 2023 WL 8827946, at *3 (finding subsequent Rule 12(b)(6) motion against unchanged complaint improper on the same grounds). As the *Ennenga* court stated, "[t]he policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." 677 F.3d at 773. That is exactly what has occurred here. Defendants lost their first attempts to dismiss Counts I, III, V, and VI of Plaintiff's Second Amended Complaint, and have now simply filed a second motion seeking to do the same, "saving [their] new arguments for a successive motion." *Williams*, No. 22 C 1422, 2023 WL 8827946, at *3. This effort is antithetical to Rule 12(g), and Defendants' request to dismiss these counts is denied.

---

legal malpractice and breach of fiduciary duty—predicated instead essentially on allegations that "the lawyers negligently drafted" the relevant document. *Id.* at 771.

## II. Count II – Retaliatory Discharge

Under Illinois law, a retaliatory discharge claim requires an employee to allege that: "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500, 911 N.E.2d 369, 374 (2009). Illinois courts have limited the reach of this tort, "emphasiz[ing] that the retaliatory-discharge cause of action is a narrow and limited exception to the employment-at-will doctrine." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 767 (7th Cir. 2013); *Ziccarelli v. Phillips*, No. 12 CV 9602, 2013 WL 5387864, at *5 (N.D. Ill. Sept. 25, 2013) (pointing out that "Illinois courts consistently have refused to expand the tort to reach personal and individual grievances") (citing *Irizarry v. Ill. Cent. R.R. Co.*, 377 Ill.App.3d 486, 316 Ill.Dec. 619, 879 N.E.2d 1007, 1012 (Ill. App. Ct. 1st Dist. 2007))).

For purposes of this motion, Defendants do not appear to dispute that Plaintiff has adequately alleged he was fired in retaliation for complaining about the Naperville Police Department's traffic quota practices. (*See* MTD at 11–12.) Indeed, Plaintiff's complaint tells a story that "holds together" on this score. *See Swanson*, 614 F.3d at 404. Plumtree alleges that he was fired "in direct retaliation" for reporting "an improper and potentially illegal ticket quota system" the Naperville Police Department was using. (TAC ¶¶ 114, 117.) He alleges that after initially receiving vague approval for "sharing" citation totals with a fellow officer, he later "reported" the quota system "to superiors within the Naperville Police Department and/or appropriate oversight or governmental bodies" due to his "belie[f] [that] the ticket quota system [was] against public policy, illegal, and/or unethical." (*Id.* ¶ 115.) The complaint avers that he did so multiple times, "verbally express[ing] [his] concerns and opposition" along with other officers during his first probationary period, and later submitting a memorandum that "outlined" the policy and its faults "in explicit detail." (*Id.* ¶¶ 38, 86.) In response, he claims, he was fired. And according to his complaint, Officer Razionale—for whom Plaintiff picked up the slack by sharing traffic citations—was treated more leniently, "permitted to resign" rather than being fired. (*Id.* ¶ 129.)

7

So too, Sergeant Heun, who had signed off on the citation-sharing arrangement, received the milder discipline of a 15-day suspension. (*Id.*) Unlike Plumtree, nothing in the complaint suggests that Heun or Razionale challenged the quota policy. And, drawing inferences in Plaintiff's favor, the uniquely harsh treatment he received was unusual; he was, after all, effective enough that he could share his own traffic stops with colleagues to keep them above water, and consistently received high performance reviews. (*See id.* ¶¶ 21–23.) Read together, these facts can support the inference that Plumtree was fired in retaliation for his complaints about the traffic policy as opposed to his improper citation-sharing practice.

Rather than hinging an argument on whether Plaintiff has adequately alleged retaliation, Defendants argue that Plaintiff's retaliatory discharge claim must be dismissed instead because he has "failed to identify any violation of a [clearly mandated] public policy in the complaint." (MTD at 12.) Defendants are correct that the tort of retaliatory discharge "has been narrowly construed in Illinois," *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 628 (7th Cir. 2009), but it does protect at-will employees "discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistle blowing.'" *Ziccarelli,* 2013 WL 5387864, at *5 (quoting *Jacobson v. Knepper & Moga, P.C.,* 185 Ill.2d 372, 235 Ill. Dec. 936, 706 N.E.2d 491, 493 (1998)). Discharges in such situations violate the "clear public policy favoring investigation and prosecution of criminal offenses." *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 133, 421 N.E.2d 876, 880 (1981).

Plaintiff here has alleged that he was fired for reporting an ongoing violation of the Illinois Municipal Code—specifically, a ban on police departments using quota systems—to his higher-ups. *See* 65 ILCS 5/11-1-12 (2019). The Municipal Code provision is not a criminal standard, but public policy clearly favors ferreting out "improper conduct" such as an explicit violation of Illinois law, especially because the only people in a position to do so effectively are the officers carrying out those policies. *Ziccarelli*, 2013 WL 5387864, at *5. Without whistle-blowing, an illegal quota policy could not readily be discovered or challenged.

8

The court finds instructive the analysis in *Foley v. Cas Partners, LLC*, No. 09 C 6786, 2010 WL 960342 (N.D. Ill. Mar. 15, 2010). There, the leasing manager for a property management organization alleged that her license expired because her employer failed to file certain paperwork with the state. *Id.* at * 1. The expired license rendered it unlawful for her to practice as a leasing agent, 225 ILCS 454/5–15, but when she complained to human resources officials and others at the company, her employer shrugged it off and insisted that she continue to work. *Id.* She also alleged that her employer was fraudulently overcharging residents for their utilities by "misrepresenting the size of the apartments they leased," and that similar protestations to HR went unaddressed. *Id.* at *1–2. After the plaintiff reported these problems, she was fired. *Id.* at *2. In finding that she had stated a retaliatory discharge claim, the court noted that the license requirements and utility overcharges were likely misdemeanors or worse and that "[t]here is no legitimate question that these statutes represent clearly defined Illinois public policy." *Id.* In support of this, the court pointed out that, in addition to criminal penalties, the Illinois attorney general or state's attorney could enforce the Real Estate Act via injunction. *Id.*

A similar situation presents here. Plumtree has at least plausibly stated a claim that the traffic-citation-quota policy was unlawful,[5] and there are facts in the complaint permitting the inference that he was fired for reporting this problem. These allegations bear close enough resemblance to the "whistle blower" category of retaliatory discharge claims recognized under Illinois law as to plausibly state a claim.

---

[5] The Attorney General, who has broad "authority to enforce state law," presumably can enjoin violations of Illinois' ban on quotas in law enforcement. *Perry v. Vill. of Arlington Heights*, 977 F. Supp. 896, 899 (N.D. Ill. 1997), *aff'd,* 186 F.3d 826 (7th Cir. 1999); *see also People ex rel. Barrett v. Finnegan,* 378 Ill. 387, 392–93, 38 N.E.2d 715 (1941) (noting that the Attorney General "may institute, conduct and maintain all such suits . . . necessary for the enforcement of the laws of the State"). Plaintiff alleges that the Illinois Attorney General has "issued requests to other police departments . . . to 'suspend or pause'" similar policies. (TAC ¶ 30.)

**CONCLUSION**

For the foregoing reasons, Defendants' motion [39] is denied.

ENTER:

Dated: June 26, 2024

_____
REBECCA R. PALLMEYER
United States District Judge